UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGIE CASTANEDA,<br><br>               Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>               Defendant. | Case No. EDCV 11-0508-JEM<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER |

**PROCEEDINGS**

On April 6, 2011, Angie Castaneda ("Plaintiff or Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits and Supplemental Security Income benefits. The Commissioner filed an Answer on July 12, 2011. On December 2, 2011, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed and this action dismissed with prejudice.

## BACKGROUND

Plaintiff is a 51 year old female who applied for Social Security Disability Insurance benefits and Supplemental Security Income benefits on April 23, 2008, both applications alleging disability beginning June 3, 2003. (AR 9.) Plaintiff has not engaged in substantial gainful activity since that date. (AR 11.)

Plaintiff's claims were denied initially on August 14, 2008, and on reconsideration on October 8, 2008. (AR 9.) Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Joseph D. Schloss on November 4, 2009, in San Bernardino, California. (AR 9, 24-35.) Claimant appeared and testified at the hearing, and was represented by counsel. (AR 9.) Vocational expert ("VE") Corinne J. Porter also appeared and testified at the hearing. (AR 9.)

The ALJ issued an unfavorable decision on December 17, 2009. (AR 9-20.) The Appeals Council denied review on March 8, 2010. (AR 1-3.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ properly considered the treating physician's opinion regarding Plaintiff's ability to work.

2. Whether there is a DOT inconsistency in the ALJ's holding that Plaintiff can perform the jobs such as cleaner, hand packer and cleaner.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v.

Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141.

Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since June 3, 2003, the alleged onset date. (AR 11.)

At step two, the ALJ determined that Plaintiff has the following combination of medically determinable severe impairments: fibromyalgia and affective mood disorder. (AR 12. )

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 12.)

The ALJ then found that Plaintiff had the RFC to perform less than the full range of medium work with the following limitations:

> [T]he claimant is 49 years old; the claimant has a 9th grade education; and the claimant has no functional limitations; the claimant has no more than moderate mental limitations in her ability to understand and remember detailed instructions; in her ability to carry out detailed instructions; and in her ability to interact appropriately with the general public[2]; and the other areas of the claimant's mental residual functional capacity assessment are not significantly limited; as such, the claimant is limited to simple repetitive tasks; short simple instructions; and non-public work activity.

(AR 13.) In determining this RFC, the ALJ also made an adverse credibility determination, which is not challenged. (AR 15.)

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a wirer, electronic wirer of harness, wirer landing gear, cafeteria assistant, bookkeeper, clerical assistant, sales clerk/cashier, auto parts deliverer, and real estate agent. (AR 18.) The ALJ, however, did find there were other jobs existing in significant numbers in the national economy that Plaintiff can perform, such as industrial cleaner, hand packager and housekeeping cleaner. (AR 19; DICOT 381.687-018, 920.587-018, 323.687-014.)

Consequently, the ALJ concluded that Claimant is not disabled within the meaning of the Social Security Act. (AR 19.)

---

[2] Moderate as described under HA 1152-U3 in a form dated June 2006, is defined as more than a slight limitation in this area but is still able to function satisfactorily. Therefore in the areas numbered 3, 5, and 12, as described at Exhibit 6F, pp. 1-2, the claimant has not more than a slight limitation, and the claimant has been given limitations that restrict her to simple repetitive tasks; short simple instructions, and non-public work activity.

5

**DISCUSSION**

The ALJ decision must be affirmed. The ALJ's RFC is supported by substantial evidence. The ALJ's step five determination that Plaintiff can perform other jobs in the national economy is supported by substantial evidence. The ALJ's non-disability determination is supported by substantial evidence and free of legal error.

## I. THE ALJ'S RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff challenges the ALJ's RFC because she claims that the ALJ failed to consider the opinion of treating physician Dr. Majd that Plaintiff "[c]annot work @ this time" (AR 229) or to provide specific legitimate reasons for rejecting the opinion of Dr. Majd. The Court disagrees.

### A. Relevant Federal Law

An RFC is not a medical determination but an administrative finding or legal decision reserved to the Commissioner based on consideration of all the relevant evidence, including medical evidence, lay witnesses and subjective symptoms. See SSR 96-5p; 20 C.F.R. § 1527(e). In determining a claimant's RFC, an ALJ must consider all the relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition. Robbins, 466 F.3d at 883.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic

techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**B. Analysis**

In assessing Plaintiff with a medium work RFC with limitations, the ALJ found that Plaintiff had no functional limitations and no more than moderate mental limitations. (AR 13.) The ALJ's RFC is supported by: (1) the opinion of Dr. Sophon, an orthopedist who found that Plaintiff had no functional limitations (AR 16); (2) the opinion of consulting psychiatrist Dr. Kikani who found only mild to moderate mental limitations (AR 16-17); (3) the opinions of State agency review physicians regarding Plaintiff's physical and mental limitations (AR 17-18); and (4) the medical treatment records of the Riverside County Jurupa Clinic indicating

Claimant was within normal limits and received conservative treatment over multiple visits. (AR 15-16.)

Plaintiff challenges the ALJ's RFC solely on the basis of a Physical Assessment treatment note dated September 8, 2009, which states in part, "Cannot work @ this time." (AR 229.) Plaintiff claims that this note is the opinion of Dr. Majd. Plaintiff also claims that the ALJ never mentions this note, fails to state whether he was accepting or rejecting Dr. Majd's purported opinion and failed to give specific, legitimate reasons for his implicit rejection of it.

An ALJ is not required to discuss every piece of evidence in the record, Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003), but is required to explain why significant and probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The treatment note is not significant or probative evidence for several reasons noted below.

First, the ALJ did not ignore the treatment note. The ALJ specifically referenced the records of the Jurupa Clinic, which contain the September 8, 2009, treatment note. (AR 15.) The ALJ noted one visit to the Jurupa Clinic in 2009. (AR 15.) The ALJ also specifically references the September 8, 2009, visit in regard to various physical and mental complaints. (AR 16.) There is no basis to suggest the ALJ was unaware of the note or missed it.

Second, the ALJ plainly did not interpret the Jurupa Clinic medical records or the September treatment note as supportive of disability. The ALJ found that "J[u]rupa Clinic reported the claimant was within normal limits in multiple areas upon physical examination; and the claimant consistently received conservative non-emergency type treatment." (AR 15.) An ALJ is responsible for resolving conflicts and ambiguities in the medical evidence. Andrews, 53 F.3d at 1039. The ALJ's interpretation of the medical evidence here is reasonable and should not be second-guessed. Rollins, 261 F.3d at 857.

Third, the reference in the treatment note that Plaintiff is unable to work at this time is not Dr. Majd's opinion at all. It is a reporting by Plaintiff of her subjective symptoms that the ALJ elsewhere discounted (AR 15) and Plaintiff does not dispute. Under the category

"Subjective" on the Physical Assessment form, physician's assistant Cynthia Stover reported as follows:

> Pt returning today for F/U or DM + fibromyalgia meds refills. Difficulty affording test strips/cannot afford rheumatology consult. Light work → sore all over - "like I got beat up." Cannot work @ this time.

(AR 229.) The statement that Plaintiff cannot work at this time is Plaintiff's own statement, as demonstrated by substantial evidence. Cynthia Stover completed the form on September 8, but Dr. Majd did not sign it until 3 days later on September 11, 2009. (AR 229.) Dr. Majd never saw the Plaintiff and there is no indication that he would have accepted a medical diagnosis from a physician's assistant. There are no medical findings to support the opinion that Plaintiff cannot work at this time, and the fact that extensive Jurupa medical records all contradict such an extreme assessment makes clear that the comment was Plaintiff's, not Dr. Majd's. This is not a case where the ALJ rejected a treating physician's opinion and thus the legal standards that govern rejection of treating physician opinions do not apply. This is a case where the ALJ rejected Plaintiff's subjective symptom statements elsewhere discounted (AR 15), a finding Plaintiff does not challenge.

Plaintiff's date last insured for Disability Insurance benefits was March 31, 2008. (AR 11.) The treatment note cited by the Plaintiff was dated September 8, 2009, approximately a year and a half after the date last insured. It has no significant probative value as to Disability Insurance benefits.

The ALJ's RFC is supported by substantial evidence. The ALJ did not ignore the September 8, 2009, treatment note and did not reject any opinion of Dr. Majd. The ALJ interpreted the Jurupa medical records, including the September 8, 2009, treatment note, as unsupportive of disability and properly discounted Plaintiff's subjective symptoms which she claims render her unable to work.

## II. THE ALJ'S STEP FIVE DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Based on the VE's testimony, the ALJ determined at step five of the sequential process that there are jobs existing in the national economy in significant numbers that Plaintiff can perform. (AR 19.) The VE testified that Plaintiff could perform three medium unskilled jobs: industrial cleaner (DICOT 381.687-018), hand packager (DICOT 920.587-018) and housekeeping cleaner (DICOT 323.687-014). (AR 19.) Plaintiff contends that there is a conflict between the VE's testimony and the ALJ's RFC limitations. The Court disagrees.

### A. Relevant Federal Law

The Commissioner bears the burden at step five of the sequential process to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. 20 C.F.R. § 416-912(g); Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000). ALJ's routinely rely on DICOT "in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). DICOT raises a presumption as to job classification requirements. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1998). An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with DICOT. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p ("the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] evidence and information provided in the [Dictionary of Occupational Titles]")). In order to accept vocational expert testimony that contradicts DICOT, "the record must contain 'persuasive evidence to support the deviation'." Pinto, 249 F.3d at 846 (quoting Johnson, 60 F.3d at 1435). The ALJ must obtain a reasonable explanation for the variance and then must decide whether to rely on the VE or DICOT. See Pinto, 249 F.3d at 847. Failure to do so, however, can be harmless error where there is no actual conflict or the VE provides sufficient support to justify any conflicts with or variation from DICOT. Massachi, 486 F.3d at 1154 n.19.

**B. Analysis**

The ALJ's RFC specifies medium work with limitations, including a limitation "to simple repetitive tasks; short simple instructions; and non-public work activity". (AR 13.) The VE testified that with this RFC Plaintiff could perform three medium unskilled jobs in the national economy, including industrial cleaner, hand packager and housekeeping cleaner. (AR 19, 32-34.) The ALJ specifically asked the VE to tell him if her testimony was inconsistent with DICOT or if she disagreed with DICOT. (AR 30.) The VE indicated no variance or disagreement, and the ALJ found the VE's testimony consistent with DICOT.

Plaintiff, however, contends that the VE's testimony is inconsistent with the ALJ's RFC limitations. Plaintiff claims that all three jobs are precluded by the RFC limitation to non-public work activity because those jobs require exposure to significant public work activity. The DICOT job descriptions, however, do not support Plaintiff's contention. None of the narrative job descriptions indicate any requirement of public activity. DICOT 381.687-018, 920.587-018, 323.687-014. The job descriptions speak only of unskilled, manual labor tasks.

More telling, all three of the DICOT job descriptions specifically indicate that interaction with people is not significant:

People: 8 - Taking Instructions - Helping    N - Not Significant

DICOT 381.687-018, 920.587-018, 323.687-014. The "8" ranking, moreover, is the lowest level of public interaction possible. DICOT Appendix B: Explanation of Data, People, and Things provides the following ranking for People:

| | | |
|---|---|---|
| | 0 | Mentoring |
| | 1 | Negotiating |
| | 2 | Instructing |
| | 3 | Supervising |
| | 4 | Diverting |
| | 5 | Persuading |
| | 6 | Speaking - Signaling |
| | 7 | Serving |

        8       Taking Instructions - Helping

Appendix B defining Taking Instructions indicates no public work activity:

> 8 Taking Instructions - Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to "non-learning helpers."

All three job descriptions also indicate that talking is not present: activity or condition does not exist. DICOT 381.687-018, 920.587-018, 323.687-014. Quite plainly, the VE's testimony does not conflict with DICOT or the ALJ's RFC as to public work activity.

Next, Plaintiff contends that the ALJ's RFC limitation to "simple repetitive tasks" and "short simple instructions" (AR 13) precludes the industrial cleaner and hand packager jobs. Plaintiff observes those jobs require a DICOT Reasoning Level of 2 and she interprets the ALJ's RFC limitations to mean Plaintiff is limited to jobs with a Reasoning Level of 1. This argument fails for several reasons.

First, Plaintiff does not acknowledge that the housekeeping cleaner job is a Reasoning Level 1 job. DICOT 323.687-014. The VE testified that there were 11,000 housekeeping cleaner jobs regionally and over 200,000 nationally. Thus, even if Plaintiff were limited to Reasoning Level 1 jobs, the ALJ's step five determination is supported by substantial evidence. Any error as to the other two jobs would be harmless because it was inconsequential to the ultimate non-disability determination. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008); Carmickle v. Comm'r Soc. Sec. Adm., 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Second, the VE and ALJ did not err as to the industrial cleaner and hand packager jobs. Plaintiff is not precluded from Reasoning Level 2 jobs. A "simple repetitive tasks" ("SRT") limitation has been held consistent with both Reasoning Level 1 (one and two-step instructions) and Reasoning Level 2 (three and four-step instructions). Chavez v. Astrue, 699 F. Supp. 2d 1125, 1136 n.10 (C.D. Cal. 2009). Thus, the SRT limitation in the ALJ's RFC does not preclude Reasoning Level 2 jobs.

1  A limitation to one or two steps of instruction corresponds to Level 1 reasoning. Grigsby v. Astrue, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010) ("the restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning"); see also Murphy v. Astrue, 2011 WL 124723, at *8 (C.D. Cal. Jan. 13, 2011); Burns v. Astrue, 2010 WL 4795562, at *8 (C.D. Cal. Nov. 18, 2010) (three and four-step instructions consistent with Reasoning Level 2 jobs). The RFC limitation to "short simple instructions" does not limit Plaintiff to one or two-step instructions that characterize jobs requiring Level 1 reasoning.

Plaintiff, however, seizes on the DICOT Reasoning Level 2 definition ("Apply commonsense understanding to carry out detailed but uninvolved written instructions"), arguing that "detailed" instructions is inconsistent with the RFC limitation to "short simple instructions." This argument was rejected in Meissl v. Barnhart, 403 F. Supp. 2d 981, 983-85 (C.D. Cal. 2005), which held that a person limited to simple instructions could perform Reasoning Level 2 jobs. Meissl rejected the notion that all jobs with a DICOT Reasoning Level of 2 or higher would be encapsulated in the world "detailed," observing the DICOT Reasoning Level 2 definition employs the qualifier "uninvolved" to downplay the rigorousness of the instructions. Meissl found that detailed but uninvolved instructions do not indicate a high level of reasoning. Id. at 984-85. Meissl also observed that unskilled jobs like those specified by the VE here require little or no judgment. Id. at 983. Thus, the short simple instructions limitation does not preclude Reasoning Level 2 jobs.

The ALJ's step five determination is supported by substantial evidence

* * *

The ALJ non-disability determination is supported by substantial evidence and free of legal error.

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED and this case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 15, 2012

*/s/ John E. McDermott*
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE